**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| In re: | Bankruptcy: 20-20346-CMB |
| Vance Strader<br>aka Advance Housing, | Chapter 13 |
| Debtor. | Related to Doc. No. 66 |
| U.S. Bank National Association, as Trustee<br>MERRILL LYNCH FIRST FRANKLIN<br>MORTGAGE LOAN TRUST, MORTGAGE<br>LOAN ASSET-BACKED CERTIFICATES,<br>SERIES 2007-4,<br>Objecting Party<br><br>v.<br><br>Vance Strader<br>aka Advance Housing,<br>Respondents. | |

## RESPONSE TO DEBTOR'S NOTICE OF OBJECTION OF PERJURY AND FRAUDULENT PROOF OF CLAIMS BY U.S. BANK AND THEIR ATTORNEYS WHO IS AN ACCOUNT DEBTORS SECURITY INTERMEDIARIES AND THIRD PARTY DEBT COLLECTORS CLAIMING TO BE A QUALIFIED HEIR ON MY ESTATE

U.S. Bank National Association, as Trustee MERRILL LYNCH FIRST FRANKLIN

MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES,

SERIES 2007-4 ("Secured Creditor"), by and through its undersigned attorney, hereby files its

Response to Debtor's Notice of Objection of Perjury and Fraudulent Proof of Claims by U.S.

Bank and Their Attorneys Who is an Account Debtors Security Intermediaries and Third Party

Debt Collectors Claiming to be a Qualified Heir on my Estate ("Objection") (DE#: 66), and in

support thereof states as follows:

## FACTS

1. On May 4, 2007, Sandra Strader executed an Adjustable Rate Note and mortgage in the amount of $105,355.00 in favor of First Franklin Financial Corporation.  See Proof of Claim 14-1 filed April 9, 2020, attached as Exhibit "A".

2. On September 29, 2015, Secured Creditor filed a Complaint in Mortgage Foreclosure in the Court of Common Pleas - Allegheny County (MG-15-001358) due to a default in the underlying note.

3. On December 11, 2018, the Court of Common Pleas - Allegheny County entered an Order Granting Secured Creditor's Motion for Summary Judgment and entered an in rem judgment in favor of Secured Creditor in the amount of $161,373.82.  See Order dated December 11, 2018, attached as Exhibit "B".

4. Debtor Vance Strader ("Debtor"), filed the instant Chapter 13 Petition on 01/30/2020.

5. Secured Creditor timely filed its Proof of Claim on 04/09/2020 as Claim Number 14-1.

6. On 07/14/2020 Debtor filed the insant Objection, asserting allegations opposing Secured Creditor's claim.


## MEMORANDUM OF LAW

Debtor's arguments within the underlying Objection run afoul of the basic principals of the "Rooker Feldman Doctrine" and should be judicially estopped due to this Court lacking

subject matter jurisdication to hear the disputes.  Debtor's Objection to Secured Creditor's Proof

of Claim should be overruled and Secured Creditor's Proof of Claim should remain valid.

### I.    This Court Lacks Subject Matter Jurisdiction to Hear Debtor's Disputes Due to the Rooker-Feldman Doctrine.

The "Rooker-Feldman Doctrine" is a statutory-based doctrine which stands for the

proposition that "lower federal courts possess no power whatsoever to sit in direct review of the

state court decisions".  Union Coast Line Railroad Company v. Brotherhood of Locomotive

Engineers, 398 U.S. 281, 296 (1970).  Under the Rooker-Feldman Doctrine, District Courts are

prohibited "from adjudicating actions in which the relief requested requires determining whether

the state court's decisions is wrong or voiding the state court's ruling."  Knapper v. Bankers

Trust Co., as Trustee for Amresco Residential Securities Corp. (In re. Knapper), 407 F.3d 573,

580 (3d. Cir. 2005), citing Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004).  The Supreme

Court has held that the Rooker-Feldman Doctrine applies to cases "brought by state-court losers

complaining of injuries caused by state-court judgments rendered before the federal district court

proceedings commenced and inviting district court reviews and rejection of those judgments."

Exxon Mobil Corp. v. Saudi Basic Industries, Corp., 544 U.S. 280, 284 (2005).  In effect, the

doctrine precludes lower federal courts from exercising appellate jurisdiction over final state

court judgments, Lance v. Dennis, 546 U.S. 549 (2006).   "It has been consistently recognized

that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments,' particularly where those lawsuits necessarily require us to re-examine state mortgage

litigation rulings." Edwards v. Specialized Loan Servicing, LLC, Civil No. 1:15-CV-335 (Dist.

Court, MD Pennsylvania (2015)).    The Third Circuit Court of Appeals has explained that the

Rooker-Feldman doctrine "preclude[es] lower federal court jurisdiction over claims that were

actually litigated or those 'inextricable intertwined' with adjudication by a state court…. We

have further explained that 'a federal action is inextricable intertwined with a state adjudication,

and thus barred in federal court under Feldman, '[w]here federal relief can only be predicated

upon a conviction that the state court was wrong." Taliaferro v. Darby Twp. Zoning Board, 458

F.3d 181, 192 (2006), quoting Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 325 (3d

Cir.2000) citing Gulla v. North Strabane Township, 146 F.3d 168, 181 (3d Cir. 1998)).

    The Third Circuit elaborated upon these holdings and provided for a few requirements

that must be met before the Rooker-Feldman Doctrine will apply: (1) the federal plaintiff lost in

state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the

judgment was rendered prior to the initiation of the federal suit filed; and (4) the plaintiff is

inviting the federal district court to review and reject the state court judgment. Great Western

Mining & Mineral Co. v. Fox Rothschild, LLP, 615 F.3d 159, 166 (Court of Appeals, 3d Cir.

2010), quoting Exxon Mobil, 544 U.S. at 284.

    Applying the aforementioned factors, it is clear that this Court does not hold subject

matter jurisdiction to consider the allegations of Debtor's Objection. Debtor "lost" in the state

court foreclosure action when the Allegheny County Court of Common Pleas entered an Order

Granting Secured Creditor's Motion for Summary Judgment and entered an in rem judgment in

favor of Secured Creditor on December 11, 2018.    Just like in the underlying foreclosure action,

the Debtor attacked Secured Creditor's legal standing to prosecute the foreclosure.    These

arguments were heard and considered by the Court of Common Pleas; which issued a final ruling

on the matters by issuing the December 11, 2018 Order Granting Secured Creditor's Motion for

Summary Judgment and entered an in rem judgment in favor of Secured Creditor.  Debtor's

instant objection to Secured Creditor's Proof of Claim does not call into question a single

transactional event or the amount of any figures contained in the Document; rather the Debtor

attempts in broad generalities to attack Secured Creditor's legal standing which was heard and

decided by the Court of Common Pleas in the underlying foreclosure action.  Litigating Secured

Creditor's legal standing within this Bankruptcy Court would amount to an improper review of

the state court's final judgment and thus, offends the Rooker-Feldman Doctrine.

### II.  Debtor is Precluded from Asserting Claims Relating to the Foreclosure Pursuant to the Doctrine of *Res Judicata*.

Debtor's Objection to Secured Creditor's Proof of Claim is based entirely on

challenging the validity of the underlying mortgage and the lgeal standing of the Secured

Creditor to enforce it.  These arguments are precluded under the doctrine of Res Judicata; also

referred to as "claim preclusion." Res Judicata prohibits the re-litigation of claims that have

already been adjudicated or that could and should have been raised in a previous proceeding.

U.S. v. Athlone Industries, Inc., 746 F.2d 977 (3d Cir. 1984);  In re Mallarkey, 536 F.3d 215 (3d.

Cir. 2008).

To determine whether the doctrine of res judicata bars a subsequent action, the Third

Circuit considers whether three circumstances are present: (1) was the prior decision a final

judgment on the merits; (2) are the litigants the same parties or their privies; and (3) is the

subsequent suit based upon the same cause of action." <u>Athlone Industries, Inc.</u>, at 983; <u>In re.</u>
<u>Mallarkey</u>.

In the present matter, the Court of Common Pleas determined, based on the proofs submitted in the underlying foreclosure action, confirmed that the foreclosing Plaintiff had proven standing when the Foreclosure Judgment was entered.   Therefore the Court of Common Pleas issued a final judgment when it entered issued a final ruling on the matters by issuing the December 11, 2018 Order Granting Secured Creditor's Motion for Summary Judgment and entered an in rem judgment in favor of Secured Creditor.   The Debtor cannot again try to re-litigate the underlying state court judgment or the documents supporting the judgment.

Second, the parties to the the Proof of Claim and Debtor's subsequent Objection are the same parties or privies of the parties to the foreclosure, namely Debtor and Secured Creditor. Regarding the final element, whether the causes of action are the same, courts must look toward the "essential similarity of the underlying events giving rise to the various legal claims." <u>Lubrizol</u> <u>Corp. v. Exxon Corp.</u>, 929 F,2d 960 (3d Cir.1991).   This principle is "in keeping with the trend of requiring that a party present all claims for relief arising out of the same occurrence or transaction in one suit." <u>Lubrizol</u>, supra at 963.   Here, even the title of Debtor's Objection underscores that Debtor is attempting to challenge the underlying foreclosure action by asking this Court again to determine whether foreclosing Plaintiff has a valid lien.   Any additional arguments could have, and should have, been raised in the underlying foreclosure action. Accordingly, the doctrine of res judicata precludes this Court from considering the allegations set forth in Debtor's Objection, and therefore it should be overruled.

### III. Secured Creditor's Proof of Claim Satisfies all Requirements of the Bankruptcy Code and should be Deemed Valid.

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), a Proof of Claim (and, by extension, supplemental proof of claim) executed and filed in accordance with the Bankruptcy Rules "shall constitute prima facie evidence of the validity and amount of the claim."   If a party objects to a proof of claim, there are shifting burdens which play a "key role" is the court's determination of whether the claim will be allowed.   Smith & Morris Holdings, LLC, 575 B.R. 637, 638 (Bankr. M.D. Pa. 2017), quoting In re Henry, 546 B.R. 633, 634 (Bankr. E.D. Pa. 2016).   Once a party properly files a proof of claim, any other party which objects has the first burden of proof.   In re Smith, at 638, quoting In re Sydnor, 571 B.R. 681, 683 (Bankr. E.D. Pa. 2017).   The objecting party must negate the prima facie validity of the claim and must do so by offering enough evidence to refute one of the "allegations essential to the claim's legal sufficiency." See In re Smith, 575 B.R. at 638, quoting In re Henry, 546 B.R. 633, 634 (Bankr. E.D. Pa. 2016).   Therefore, if the objecting party cannot provide enough evidence, the claim will keep its prima facie validity.

In the current case, Secured Creditor filed its Proof of Claim (POC No.: 14) on April 9, 2020.   This filing was prior to the expiration of the deadline to file claims.   The Proof of Claim consists of a transactional pay history as well as copies of the underlying note and mortgage agreement.   None of Debtor's allegations rise to the level of overcoming the Bankruptcy Code's presumption of a valid claim contained in Rule 3001(f).   Because of this, Debtor's Objection should be overruled and Secured Creditor's Proof of Claim should be deemed valid.

**WHEREFORE**, Creditor respectfully requests that this Honorable Court overrules Debtor's Objection and allows Secured Creditor's Proof of Claim as filed so as to preserve Creditor's Claim, and for such other and further relief as the Court may deem just and proper.

**Robertson, Anschutz, Schneid & Crane LLC**
Attorney for Secured Creditor
10700 Abbott's Bridge Rd., Suite 170
Duluth, GA  30097
Telephone: (470) 321-7112
By: /s/ Charles G. Wohlrab
Charles G. Wohlrab, Esquire
PA Bar Number  314532
Email: cwohlrab@rascrane.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| In re: | Bankruptcy 20-20346-CMB |
| Vance Strader<br>aka Advance Housing,<br>                    Debtor. | Chapter 13<br><br>Related to Doc. No. 66 |
| U.S. Bank National Association, as Trustee<br>MERRILL LYNCH FIRST FRANKLIN<br>MORTGAGE LOAN TRUST, MORTGAGE<br>LOAN ASSET-BACKED CERTIFICATES,<br>SERIES 2007-4,<br>                    Objecting Party<br>     v.<br><br>Vance Strader<br>aka Advance Housing,<br>                    Respondents. | |

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on_____August 3, 2020_____, the foregoing response

was caused to be electronically filed with the clerk of court by using the CM/ECF system, and a

true and correct copy has been served via CM/ECF or United States Mail to the following

parties:


Vance Strader
231 Yosemite Dr.
Pittsburgh, PA 15235

Ronda J. Winnecour
600 Grant Street
Suite 3250, USX Tower
Pittsburgh, PA 15219

U.S. Trustee
Office of the United States Trustee
Liberty Center
1001 Liberty Avenue, Suite 970
Pittsburgh, PA 15222

**ROBERTSON, ANSCHUTZ, SCHNEID
& CRANE LLC**
Authorized Agent for Secured Creditor
10700 Abbott's Bridge Road, Suite 170
Duluth, GA 30097
Telephone: 470-321-7112
Facsimile: 404-393-1425

By: /s/ Dena Eaves
Dena Eaves
Email: deaves@rascrane.com

# Exhibit "A"

<table>
<tr><td colspan="2">

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1    Vance Strader | |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court    **WESTERN DISTRICT OF PENNSYLVANIA** | |
| Case number:    **20−20346** | |

</td></tr>
</table>

**FILED**

**U.S. Bankruptcy Court**
**WESTERN DISTRICT OF**
**PENNSYLVANIA**

4/9/2020

**Michael R. Rhodes, Clerk**

# Official Form 410
# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

U.S. BANK NATIONAL ASSOCIATION

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION | Nationstar Mortgage LLC d/b/a Mr. Cooper |
| Name | Name |
| Nationstar Mortgage LLC d/b/a Mr. Cooper<br>ATTN: Bankruptcy Dept<br>PO Box 619096<br>Dallas, TX 75261−9741 | ATTN: Bankruptcy Dept<br>PO Box 619094<br>Dallas, TX 75261−9741 |
| Contact phone    8773435602 | Contact phone    8773435602 |
| Contact email _____ | Contact email _____ |

Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____  Filed on _____
                                                                            MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6.** **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:      0973 |

**7.** **How much is the claim?**     $     186013.46     **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

     MONEY LOANED

**9.** **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.
    **Nature of property:**
    ☑ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
    ☐ Motor vehicle
    ☑ Other. Describe:     231 YOSEMITE DR, PITTSBURGH, PA 15235

    **Basis for perfection:**     Mortgage/Deed of Trust

    Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

    **Value of property:**     $

    **Amount of the claim that is secured:**     $     186013.46

    **Amount of the claim that is unsecured:**     $     0.00     (The sum of the secured and unsecured amounts should match the amount in line 7.)

    **Amount necessary to cure any default as of the date of the petition.**     $     94637.70

    **Annual Interest Rate** (when case was filed)     10.55     %
    ☑ Fixed
    ☐ Variable

**10.** **Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $

**11.** **Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property:

| | | |
|---|---|---|
| Official Form 410 | Proof of Claim | page 2 |

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. *Check all that apply:* | | Amount entitled to priority |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
|---|---|---|
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**<br>**18 U.S.C. §§ 152, 157 and 3571.** | Check the appropriate box:<br><br>☐ I am the creditor.<br>☑ I am the creditor's attorney or authorized agent.<br>☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date  ___4/9/2020___
MM / DD / YYYY

/s/  /s/David Neeren, Esquire

Signature

Print the name of the person who is completing and signing this claim:

Name  /s/David Neeren, Esquire

Title
First name    Middle name    Last name
Authorized Agent for Secured Creditor

Company  RAS Citron LLC

Address
Identify the corporate servicer as the company if the authorized agent is a servicer
133 Gaither Drive, Suite F

Number   Street
Mt. Laurel, NJ 08054

City   State   ZIP Code

Contact phone  855-225-6906        Email _____

**Fill in this information to identify the case:**

Debtor 1 Vance Strader
aka Advance Housing

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the WESTERN District of PENNSYLVANIA

Case number 20-20346-CMB

## Official Form 410
# Proof of Claim

04/19

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| **Part 1:** | **Identify the Claim** |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. | **What is the current creditor?** | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-4 <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| 2. | **Has this claim been acquired from someone else** | [ ] No <br> [ ] Yes. From whom? |

| 3. | **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- | --- |
| | | Nationstar Mortgage LLC d/b/a Mr. Cooper <br> Name <br><br> ATTN: Bankruptcy Dept <br><br> PO Box 619096 <br> Number     Street <br><br> Dallas  TX  75261-9741 <br> City          State          ZIP Code <br><br> Contact phone  877-343-5602 <br><br> Contact email | Nationstar Mortgage LLC d/b/a Mr. Cooper <br> Name <br><br> ATTN: Bankruptcy Dept <br><br> PO Box 619094 <br> Number     Street <br><br> Dallas  TX  75261-9741 <br> City          State          ZIP Code <br><br> Contact phone  877-343-5602 <br><br> Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one) <br><br> __ __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |

| 4. | **Does this claim amend one already filed?** | [X] No <br> [ ] Yes.  Claim number on court claim registry (if known) _____ | Filed on _____ <br> MM/DD/YYYY |
| --- | --- | --- | --- |
| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | [X] No <br> [ ] Yes. Who made the earlier filing? | |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | **Do you have any number you use to identify the debtor** | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>0973</u> | |
|---|---|---|---|
| 7. | **How much is the claim?** | $ <u>186,013.46</u> | **Does this amount include interest or other charges?**<br>[ ] No<br>[X] Yes.  Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |
| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>MONEY LOANED</u> | |
| 9. | **Is all or part of the claim secured?** | [ ] No<br>[X] Yes    The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>[X] Real estate. **If the claim is secured by the debtor's principal residence, file a** *Mortgage Proof of Claim*<br>        *Attachment* (Official Form 410-A) with this Proof of Claim.<br><br>[ ]     Motor vehicle<br>[ ]     Other. Describe:    <u>231 YOSEMITE DR, PITTSBURGH, PA 15235</u><br><br>**Basis for perfection:**    <u>Mortgage/Deed of Trust</u><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**<br><br>**Amount of the claim that is secured:**   $ <u>186,013.46</u><br><br>**Amount of the claim that is unsecured:** $<u>          </u>  (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**   $94,637.70<br><br>**Annual Interest Rate** (when case was filed)<u>10.5500</u>%<br><br>[X]     Fixed<br>[ ]     Variable | |
| 10. | **Is this claim based on a lease?** | [X]  No<br>[ ]  Yes. **Amount necessary to cure any default as of the date of the petition.**   $<u>          </u> | |
| 11. | **Does this claim involve a right to setoff?** | [X]  No<br>[ ]  Yes. Identify the property <u>                         </u> | |

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?** |  |  |
|---|---|---|---|
|  |  | [X] No |  |
|  |  | [ ] Yes. *Check one:* | **Amount entitled to priority** |
|  | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). | $_____ |
|  |  | [ ] Up to $3,025* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $_____ |
|  |  | [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $_____ |
|  |  | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $_____ |
|  |  | [ ] Contributions to an employee benefit plan.11 U.S.C. §507(a)(5). | $_____ |
|  |  | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | $_____ |
|  |  | * Amount are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment | |

| **Part 3:** | **Sign Below** |
|---|---|

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box*

[ ]  I am the creditor
[X]  I am the creditor's attorney or authorized agent.
[ ]  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
[ ]  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 04/09/2020 _____
　　　　　　　　　　MM/DD/YYYY

/s/David Neeren, Esquire
　　　Signature

**Print the name of the person who is completing and signing this claim:**

**David Neeren**
Authorized Agent for Secured Creditor
RAS Citron LLC
133 Gaither Drive, Suite F
Mt. Laurel, NJ 08054
855-225-6906 Ext. 1304

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 20-20346-CMB | Principal balance: | $98,769.32 | Principal & interest due: | $61,236.48 | Principal & interest: | $956.82 |
| Debtor 1: | Vance Strader aka Advance Housing | Interest due: | $56,442.55 | Prepetition fees due: | $10,137.77 | Monthly escrow: | $371.38 |
| Debtor 2: | | Fees, costs due: | $10,137.77 | Escrow deficiency for funds advanced: | $20,663.82 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 0973 | Escrow deficiency for funds advanced: | $20,663.82 | Projected escrow shortage: | $2,599.63 | Other: | $0.00 |
| Creditor: | U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES, SERIES 2007-4 | Less total funds on hand: | $0.00 | Less funds on hand: | $0.00 | Total monthly payment: | $1,328.20 |
| Servicer: | Nationstar Mortgage LLC d/b/a Mr. Cooper | Other: | $0.00 | Total prepetition arrearage: | $94,637.70 | | |
| Fixed accrual/daily simple interest/other: | Fixed | Total debt: | $186,013.46 | | | | |

## Part 5: Loan Payment History from First Date of Default

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/1/2013 | $1,241.74 | | | Monthly Mortgage Payment Due | 7/1/2013 | $1,241.74 | | | | | | $100,007.70 | $- | $1,623.55 | $- | $- |
| 7/12/2013 | | $1,241.74 | | PAYMENT | 8/1/2013 | $- | $77.59 | $879.23 | $284.92 | | 0.00 | $99,930.11 | $- | $1,908.47 | $- | $0.00 |
| 7/12/2013 | $0.15 | $0.15 | | PRINCIPAL PAYMENT | 8/1/2013 | $- | $0.15 | $- | $- | | | $99,929.96 | $- | $1,908.47 | $- | $0.00 |
| 8/1/2013 | $1,241.74 | | | Monthly Mortgage Payment Due | 8/1/2013 | $1,241.74 | | | | | | $99,929.96 | $- | $1,908.47 | $- | $0.00 |
| 8/5/2013 | | | | SCHOOL TAX DISBURSED | 8/1/2013 | $1,241.74 | | | $(1,965.53) | | | $99,929.96 | $- | $(57.06) | $- | $0.00 |
| 8/16/2013 | | | $47.84 | ZZZZF-Late Charges | 8/1/2013 | $1,241.74 | | | | | | $99,929.96 | $- | $(57.06) | $47.84 | $0.00 |
| 8/16/2013 | | | $(47.84) | NON CASH FEE ADJ | 8/1/2013 | $1,241.74 | | | | | | $99,929.96 | $- | $(57.06) | $- | $0.00 |
| 8/19/2013 | | $1,241.74 | | PAYMENT | 9/1/2013 | $- | $78.27 | $878.55 | $284.92 | | 0.00 | $99,851.69 | $- | $227.86 | $- | $0.00 |
| 9/1/2013 | $1,241.74 | | | Monthly Mortgage Payment Due | 9/1/2013 | $1,241.74 | | | | | | $99,851.69 | $- | $227.86 | $- | $0.00 |
| 9/13/2013 | | $1,241.74 | | PAYMENT | 10/1/2013 | $- | $78.96 | $877.86 | $284.92 | | (0.00) | $99,772.73 | $- | $512.78 | $- | $0.00 |
| 10/1/2013 | $1,241.74 | | | Monthly Mortgage Payment Due | 10/1/2013 | $1,241.74 | | | | | | $99,772.73 | $- | $512.78 | $- | $0.00 |
| 10/15/2013 | | $1,241.74 | | PAYMENT | 11/1/2013 | $- | $79.65 | $877.17 | $284.92 | | (0.00) | $99,693.08 | $- | $797.70 | $- | $- |
| 11/1/2013 | $1,241.74 | | | Monthly Mortgage Payment Due | 11/1/2013 | $1,241.74 | | | | | | $99,693.08 | $- | $797.70 | $- | $- |
| 11/15/2013 | | $1,241.74 | | PAYMENT | 12/1/2013 | $- | $80.35 | $876.47 | $284.92 | | 0.00 | $99,612.73 | $- | $1,082.62 | $- | $0.00 |
| 12/1/2013 | $1,198.50 | | | Monthly Mortgage Payment Due | 12/1/2013 | $1,198.50 | | | | | | $99,612.73 | $- | $1,082.62 | $- | $0.00 |
| 12/11/2013 | | $1,198.50 | | PAYMENT | 1/1/2014 | $- | $81.06 | $875.76 | $241.68 | | 0.00 | $99,531.67 | $- | $1,324.30 | $- | $0.00 |
| 1/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 1/1/2014 | $1,198.50 | | | | | | $99,531.67 | $- | $1,324.30 | $- | $0.00 |
| 1/10/2014 | | $1,198.50 | | PAYMENT | 2/1/2014 | $- | $81.77 | $875.05 | $241.68 | | 0.00 | $99,449.90 | $- | $1,565.98 | $- | $0.00 |
| 2/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 2/1/2014 | $1,198.50 | | | | | | $99,449.90 | $- | $1,565.98 | $- | $0.00 |
| 2/13/2014 | | $1,198.50 | | PAYMENT | 3/1/2014 | $- | $82.49 | $874.33 | $241.68 | | (0.00) | $99,367.41 | $- | $1,807.66 | $- | $0.00 |
| 3/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 3/1/2014 | $1,198.50 | | | | | | $99,367.41 | $- | $1,807.66 | $- | $0.00 |
| 3/4/2014 | | | | COUNTY TAX DISBURSED | 3/1/2014 | $1,198.50 | | | $(348.59) | | | $99,367.41 | $- | $1,459.07 | $- | $0.00 |
| 3/13/2014 | | $1,198.50 | | PAYMENT | 4/1/2014 | $- | $83.21 | $873.61 | $241.68 | | (0.00) | $99,284.20 | $- | $1,700.75 | $- | $0.00 |
| 4/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 4/1/2014 | $1,198.50 | | | | | | $99,284.20 | $- | $1,700.75 | $- | $0.00 |
| 4/9/2014 | | | | TOWN TAX DISBURSED | 4/1/2014 | $1,198.50 | | | $(497.23) | | | $99,284.20 | $- | $1,203.52 | $- | $0.00 |
| 4/11/2014 | | $1,198.50 | | PAYMENT | 5/1/2014 | $- | $83.95 | $872.87 | $241.68 | | (0.00) | $99,200.25 | $- | $1,445.20 | $- | $- |
| 5/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 5/1/2014 | $1,198.50 | | | | | | $99,200.25 | $- | $1,445.20 | $- | $- |
| 5/16/2014 | | $1,198.50 | | PAYMENT | 6/1/2014 | $- | $84.68 | $872.14 | $241.68 | | (0.00) | $99,115.57 | $- | $1,686.88 | $- | $(0.00) |
| 6/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 6/1/2014 | $1,198.50 | | | | | | $99,115.57 | $- | $1,686.88 | $- | $(0.00) |
| 6/12/2014 | | $1,198.50 | | PAYMENT | 7/1/2014 | $- | $85.43 | $871.39 | $241.68 | | (0.00) | $99,030.14 | $- | $1,928.56 | $- | $(0.00) |
| 7/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 7/1/2014 | $1,198.50 | | | | | | $99,030.14 | $- | $1,928.56 | $- | $(0.00) |
| 7/16/2014 | | | $47.84 | ZZZZF-Late Charges | 7/1/2014 | $1,198.50 | | | | | | $99,030.14 | $- | $1,928.56 | $47.84 | $(0.00) |
| 8/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 7/1/2014 | $2,397.00 | | | | | | $99,030.14 | $- | $1,928.56 | $47.84 | $(0.00) |
| 8/18/2014 | | | $47.84 | ZZZZF-Late Charges | 7/1/2014 | $2,397.00 | | | | | | $99,030.14 | $- | $1,928.56 | $95.68 | $(0.00) |
| 8/19/2014 | | | | SCHOOL TAX DISBURSED | 7/1/2014 | $2,397.00 | | | $(2,020.81) | | | $99,030.14 | $- | $(92.25) | $95.68 | $(0.00) |
| 9/1/2014 | $1,198.50 | | | Monthly Mortgage Payment Due | 7/1/2014 | $3,595.50 | | | | | | $99,030.14 | $- | $(92.25) | $95.68 | $(0.00) |
| 9/16/2014 | | | $47.84 | ZZZZF-Late Charges | 7/1/2014 | $3,595.50 | | | | | | $99,030.14 | $- | $(92.25) | $143.52 | $(0.00) |
| 9/26/2014 | | | $15.00 | Prop Insp | 7/1/2014 | $3,595.50 | | | | | | $99,030.14 | $- | $(92.25) | $158.52 | $(0.00) |
| 9/30/2014 | | | $15.00 | Prop Insp | 7/1/2014 | $3,595.50 | | | | | | $99,030.14 | $- | $(92.25) | $173.52 | $(0.00) |
| 10/1/2014 | $956.82 | | | Delinquent P&I Payment Due | 7/1/2014 | $4,552.32 | | | | | | $99,030.14 | $- | $(92.25) | $173.52 | $(0.00) |
| 10/6/2014 | | $1,198.50 | | PAYMENT | 8/1/2014 | $3,353.82 | $86.18 | $870.64 | $241.68 | | (0.00) | $98,943.96 | $- | $149.43 | $173.52 | $(0.00) |
| 10/6/2014 | | $1,143.45 | | PMT-FORBEAR SUSP | 8/1/2014 | $2,210.37 | $- | $- | $- | | $1,143.45 | $98,943.96 | $- | $149.43 | $173.52 | $1,143.45 |
| 10/16/2014 | | | $47.84 | ZZZZF-Late Charges | 8/1/2014 | $2,210.37 | | | | | | $98,943.96 | $- | $149.43 | $221.36 | $1,143.45 |
| 10/23/2014 | | | $15.00 | Prop Insp | 8/1/2014 | $2,210.37 | | | | | | $98,943.96 | $- | $149.43 | $236.36 | $1,143.45 |
| 10/31/2014 | | $1,198.50 | | PAYMENT | 9/1/2014 | $1,011.87 | $86.94 | $869.88 | $241.68 | | (0.00) | $98,857.02 | $- | $391.11 | $236.36 | $1,143.45 |
| 11/1/2014 | $956.82 | | | Delinquent P&I Payment Due | 9/1/2014 | $1,968.69 | | | | | | $98,857.02 | $- | $391.11 | $236.36 | $1,143.45 |
| 11/17/2014 | | | $47.84 | ZZZZF-Late Charges | 9/1/2014 | $1,968.69 | | | | | | $98,857.02 | $- | $391.11 | $284.20 | $1,143.45 |
| 12/1/2014 | $956.82 | | | Delinquent P&I Payment Due | 9/1/2014 | $2,925.51 | | | | | | $98,857.02 | $- | $391.11 | $284.20 | $1,143.45 |
| 12/15/2014 | | $1,198.50 | | PAYMENT | 10/1/2014 | $1,727.01 | $87.70 | $869.12 | $241.68 | | (0.00) | $98,769.32 | $- | $632.79 | $284.20 | $1,143.45 |
| 12/16/2014 | | | $47.84 | ZZZZF-Late Charges | 10/1/2014 | $1,727.01 | | | | | | $98,769.32 | $- | $632.79 | $332.04 | $1,143.45 |
| 12/16/2014 | | | $15.00 | Prop Insp | 10/1/2014 | $1,727.01 | | | | | | $98,769.32 | $- | $632.79 | $347.04 | $1,143.45 |
| 12/23/2014 | | | $15.00 | Prop Insp | 10/1/2014 | $1,727.01 | | | | | | $98,769.32 | $- | $632.79 | $362.04 | $1,143.45 |
| 1/1/2015 | $956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $2,683.83 | | | | | | $98,769.32 | $- | $632.79 | $362.04 | $1,143.45 |
| 1/5/2015 | | $(1,143.45) | | FORBEARANCE SUSP DISP | 10/1/2014 | $3,827.28 | $- | $- | $- | | $(1,143.45) | $98,769.32 | $- | $632.79 | $362.04 | $- |
| 1/6/2015 | | | $15.00 | Prop Insp | 10/1/2014 | $3,827.28 | | | | | | $98,769.32 | $- | $632.79 | $377.04 | $- |

| Date | Pmt | Amount | Description | Date | Balance | | | Disbursed | | Bal | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/16/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 3,827.28 | | | $ - | $ 98,769.32 | $ - | $ 632.79 | $ 424.88 | $ - |
| 2/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 4,784.10 | | | $ - | $ 98,769.32 | $ - | $ 632.79 | $ 424.88 | $ - |
| 2/5/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 4,784.10 | | | $ - | $ 98,769.32 | $ - | $ 632.79 | $ 439.88 | $ - |
| 2/17/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 4,784.10 | | | $ - | $ 98,769.32 | $ - | $ 632.79 | $ 487.72 | $ - |
| 2/19/2015 | | | COUNTY TAX DISBURSED | 10/1/2014 | $ 4,784.10 | | $ (348.59) | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 487.72 | $ - |
| 3/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 487.72 | $ - |
| 3/16/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 535.56 | $ - |
| 3/19/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 550.56 | $ - |
| 3/23/2015 | | $ (15.00) | Prop Insp | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 535.56 | $ - |
| 3/27/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 550.56 | $ - |
| 3/31/2015 | | $ (15.00) | Prop Insp | 10/1/2014 | $ 5,740.92 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 535.56 | $ - |
| 4/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 6,697.74 | | | $ - | $ 98,769.32 | $ - | $ 284.20 | $ 535.56 | $ - |
| 4/16/2015 | | | TOWN TAX DISBURSED | 10/1/2014 | $ 6,697.74 | | $ (497.23) | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 535.56 | $ - |
| 4/16/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 6,697.74 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 583.40 | $ - |
| 4/21/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 6,697.74 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 598.40 | $ - |
| 5/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 7,654.56 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 598.40 | $ - |
| 5/13/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 7,654.56 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 613.40 | $ - |
| 5/18/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 7,654.56 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 661.24 | $ - |
| 6/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 8,611.38 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 661.24 | $ - |
| 6/9/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 8,611.38 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 676.24 | $ - |
| 6/16/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 8,611.38 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 724.08 | $ - |
| 7/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 9,568.20 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 724.08 | $ - |
| 7/6/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 9,568.20 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 739.08 | $ - |
| 7/16/2015 | | $ 47.84 | ZZZZF-Late Charges | 10/1/2014 | $ 9,568.20 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 786.92 | $ - |
| 7/29/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 9,568.20 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 801.92 | $ - |
| 7/30/2015 | | $ (15.00) | Prop Insp | 10/1/2014 | $ 9,568.20 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 786.92 | $ - |
| 8/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 10,525.02 | | | $ - | $ 98,769.32 | $ - | $ (213.03) | $ 786.92 | $ - |
| 8/13/2015 | | | SCHOOL TAX DISBURSED | 10/1/2014 | $ 10,525.02 | | $ (2,078.16) | $ - | $ 98,769.32 | $ - | $ (2,291.19) | $ 786.92 | $ - |
| 8/24/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 10,525.02 | | | $ - | $ 98,769.32 | $ - | $ (2,291.19) | $ 801.92 | $ - |
| 9/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 11,481.84 | | | $ - | $ 98,769.32 | $ - | $ (2,291.19) | $ 801.92 | $ - |
| 9/3/2015 | | | HAZARD SFR DISBURSED | 10/1/2014 | $ 11,481.84 | | $ (1,143.00) | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 801.92 | $ - |
| 9/4/2015 | | $ 265.00 | Title Examintn | 10/1/2014 | $ 11,481.84 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 1,066.92 | $ - |
| 9/17/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 11,481.84 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 1,081.92 | $ - |
| 10/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 12,438.66 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 1,081.92 | $ - |
| 10/13/2015 | | $ 1,175.00 | FC Fee | 10/1/2014 | $ 12,438.66 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,256.92 | $ - |
| 10/13/2015 | | $ 242.00 | Filling Costs | 10/1/2014 | $ 12,438.66 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,498.92 | $ - |
| 10/16/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 12,438.66 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,513.92 | $ - |
| 11/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 13,395.48 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,513.92 | $ - |
| 11/12/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 13,395.48 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,528.92 | $ - |
| 12/1/2015 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 14,352.30 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,528.92 | $ - |
| 12/3/2015 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 14,352.30 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,543.92 | $ - |
| 12/31/2015 | | $ 145.00 | BPO | 10/1/2014 | $ 14,352.30 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,688.92 | $ - |
| 1/1/2016 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 15,309.12 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,688.92 | $ - |
| 1/4/2016 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 15,309.12 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,703.92 | $ - |
| 1/25/2016 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 15,309.12 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,718.92 | $ - |
| 1/26/2016 | | $ (15.00) | Prop Insp | 10/1/2014 | $ 15,309.12 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,703.92 | $ - |
| 2/1/2016 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 16,265.94 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,703.92 | $ - |
| 2/23/2016 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 16,265.94 | | | $ - | $ 98,769.32 | $ - | $ (3,434.19) | $ 2,718.92 | $ - |
| 2/24/2016 | | | COUNTY TAX DISBURSED | 10/1/2014 | $ 16,265.94 | | $ (348.59) | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 2,718.92 | $ - |
| 3/1/2016 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 2,718.92 | $ - |
| 3/23/2016 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 2,733.92 | $ - |
| 3/31/2016 | | $ 250.00 | FC Fee | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 2,983.92 | $ - |
| 3/31/2016 | | $ 95.00 | Publication | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,078.92 | $ - |
| 3/31/2016 | | $ 57.50 | Publication | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,136.42 | $ - |
| 3/31/2016 | | $ 225.00 | SHERIFF COSTS | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,361.42 | $ - |
| 3/31/2016 | | $ 75.00 | SHERIFF COSTS | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,436.42 | $ - |
| 3/31/2016 | | $ 75.00 | SHERIFF COSTS | 10/1/2014 | $ 17,222.76 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,511.42 | $ - |
| 4/1/2016 | 956.82 | | Delinquent P&I Payment Due | 10/1/2014 | $ 18,179.58 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,511.42 | $ - |
| 4/8/2016 | | $ 15.00 | Prop Insp | 10/1/2014 | $ 18,179.58 | | | $ - | $ 98,769.32 | $ - | $ (3,782.78) | $ 3,526.42 | $ - |
| 4/19/2016 | | | TOWN TAX DISBURSED | 10/1/2014 | $ 18,179.58 | | $ (497.23) | $ - | $ 98,769.32 | $ - | $ (4,280.01) | $ 3,526.42 | $ - |
| 4/26/2016 | | $ 95.00 | Publication | 10/1/2014 | $ 18,179.58 | | | $ - | $ 98,769.32 | $ - | $ (4,280.01) | $ 3,621.42 | $ - |

| Date | P&I Payment | Amount | Description | Prin Date / Balance | Disbursed | | $98,769.32 | | Running |
|---|---|---|---|---|---|---|---|---|---|
| 4/26/2016 | | $ 698.75 | Publication | 10/1/2014 $ 18,179.58 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,320.17 | $ - |
| 5/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 19,136.40 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,320.17 | $ - |
| 5/5/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 19,136.40 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,335.17 | $ - |
| 5/6/2016 | | $ 145.00 | BPO | 10/1/2014 $ 19,136.40 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,480.17 | $ - |
| 5/16/2016 | | $ 250.00 | FC Fee | 10/1/2014 $ 19,136.40 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,730.17 | $ - |
| 6/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,730.17 | $ - |
| 6/2/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,745.17 | $ - |
| 6/10/2016 | | $ 31.75 | Locksmith | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,776.92 | $ - |
| 6/10/2016 | | $ 63.85 | Locksmith | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,840.77 | $ - |
| 6/13/2016 | | $ 42.66 | Locksmith | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (4,280.01) $ 4,883.43 | $ - |
| 6/21/2016 | | | HAZARD SFR DISBURSED | 10/1/2014 $ 20,093.22 | $ (1,151.00) | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 4,883.43 | $ - |
| 6/27/2016 | | $ 10.00 | Land-Periodic | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 4,893.43 | $ - |
| 6/28/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 4,908.43 | $ - |
| 6/29/2016 | | $ (15.00) | Prop Insp | 10/1/2014 $ 20,093.22 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 4,893.43 | $ - |
| 7/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 4,893.43 | $ - |
| 7/21/2016 | | $ 470.00 | FC Fee | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 5,363.43 | $ - |
| 7/21/2016 | | $ 76.50 | Filing Costs | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 5,439.93 | $ - |
| 7/21/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 5,454.93 | $ - |
| 7/21/2016 | | $ 1,600.00 | SHERIFF COSTS | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 7,054.93 | $ - |
| 7/21/2016 | | $ 75.00 | SHERIFF COSTS | 10/1/2014 $ 21,050.04 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 7,129.93 | $ - |
| 8/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 22,006.86 | | $ - | $ 98,769.32 $ - | $ (5,431.01) $ 7,129.93 | $ - |
| 8/16/2016 | | | SCHOOL TAX DISBURSED | 10/1/2014 $ 22,006.86 | $ (2,208.99) | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 7,129.93 | $ - |
| 8/18/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 22,006.86 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 7,144.93 | $ - |
| 9/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 22,963.68 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 7,144.93 | $ - |
| 9/12/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 22,963.68 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 7,159.93 | $ - |
| 9/14/2016 | | $ (76.50) | Locksmith | 10/1/2014 $ 22,963.68 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 7,083.43 | $ - |
| 9/14/2016 | | $ (1,600.00) | SHERIFF COSTS | 10/1/2014 $ 22,963.68 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,483.43 | $ - |
| 10/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 23,920.50 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,483.43 | $ - |
| 10/13/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 23,920.50 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,498.43 | $ - |
| 10/13/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 23,920.50 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,513.43 | $ - |
| 10/14/2016 | | $ (15.00) | Prop Insp | 10/1/2014 $ 23,920.50 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,498.43 | $ - |
| 10/28/2016 | | $ 175.00 | BPO | 10/1/2014 $ 23,920.50 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,673.43 | $ - |
| 11/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 24,877.32 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,673.43 | $ - |
| 11/9/2016 | | $ (15.00) | Prop Insp | 10/1/2014 $ 24,877.32 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,658.43 | $ - |
| 11/14/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 24,877.32 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,673.43 | $ - |
| 12/1/2016 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 25,834.14 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,673.43 | $ - |
| 12/12/2016 | | $ 15.00 | Prop Insp | 10/1/2014 $ 25,834.14 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,688.43 | $ - |
| 1/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 26,790.96 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,688.43 | $ - |
| 1/6/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 26,790.96 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,703.43 | $ - |
| 2/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 27,747.78 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,703.43 | $ - |
| 2/7/2017 | | $ 175.00 | BPO | 10/1/2014 $ 27,747.78 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,878.43 | $ - |
| 2/8/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 27,747.78 | | $ - | $ 98,769.32 $ - | $ (7,640.00) $ 5,893.43 | $ - |
| 2/28/2017 | | | COUNTY TAX DISBURSED | 10/1/2014 $ 27,747.78 | $ (348.59) | $ - | $ 98,769.32 $ - | $ (7,988.59) $ 5,893.43 | $ - |
| 3/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 28,704.60 | | $ - | $ 98,769.32 $ - | $ (7,988.59) $ 5,893.43 | $ - |
| 3/7/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 28,704.60 | | $ - | $ 98,769.32 $ - | $ (7,988.59) $ 5,908.43 | $ - |
| 4/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 29,661.42 | | $ - | $ 98,769.32 $ - | $ (7,988.59) $ 5,908.43 | $ - |
| 4/6/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 29,661.42 | | $ - | $ 98,769.32 $ - | $ (7,988.59) $ 5,923.43 | $ - |
| 4/19/2017 | | | TOWN TAX DISBURSED | 10/1/2014 $ 29,661.42 | $ (497.23) | $ - | $ 98,769.32 $ - | $ (8,485.82) $ 5,923.43 | $ - |
| 5/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 30,618.24 | | $ - | $ 98,769.32 $ - | $ (8,485.82) $ 5,923.43 | $ - |
| 5/4/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 30,618.24 | | $ - | $ 98,769.32 $ - | $ (8,485.82) $ 5,938.43 | $ - |
| 6/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 31,575.06 | | $ - | $ 98,769.32 $ - | $ (8,485.82) $ 5,938.43 | $ - |
| 6/20/2017 | | | HAZARD SFR DISBURSED | 10/1/2014 $ 31,575.06 | $ (1,056.00) | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,938.43 | $ - |
| 7/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 32,531.88 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,938.43 | $ - |
| 7/3/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 32,531.88 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,953.43 | $ - |
| 7/19/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 32,531.88 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,968.43 | $ - |
| 7/20/2017 | | $ (15.00) | Prop Insp | 10/1/2014 $ 32,531.88 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,953.43 | $ - |
| 8/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 33,488.70 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,953.43 | $ - |
| 8/1/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 33,488.70 | | $ - | $ 98,769.32 $ - | $ (9,541.82) $ 5,968.43 | $ - |
| 8/10/2017 | | | SCHOOL TAX DISBURSED | 10/1/2014 $ 33,488.70 | $ (2,325.98) | $ - | $ 98,769.32 $ - | $ (11,867.80) $ 5,968.43 | $ - |
| 8/29/2017 | | $ 15.00 | Prop Insp | 10/1/2014 $ 33,488.70 | | $ - | $ 98,769.32 $ - | $ (11,867.80) $ 5,983.43 | $ - |
| 9/1/2017 | $ 956.82 | | Delinquent P&I Payment Due | 10/1/2014 $ 34,445.52 | | $ - | $ 98,769.32 $ - | $ (11,867.80) $ 5,983.43 | $ - |

| Date | P&I | Amt | Fee | Description | Date | Balance | | | Disb | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/28/2017 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 34,445.52 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 5,998.43 | $ - |
| 10/1/2017 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 35,402.34 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 5,998.43 | $ - |
| 10/27/2017 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 35,402.34 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,013.43 | $ - |
| 11/1/2017 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 36,359.16 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,013.43 | $ - |
| 11/27/2017 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 36,359.16 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,028.43 | $ - |
| 12/1/2017 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 37,315.98 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,028.43 | $ - |
| 1/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 38,272.80 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,028.43 | $ - |
| 1/2/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 38,272.80 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,043.43 | $ - |
| 1/24/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 38,272.80 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,058.43 | $ - |
| 1/25/2018 | | | $ (15.00) | Prop Insp | 10/1/2014 | $ 38,272.80 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,043.43 | $ - |
| 2/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 39,229.62 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,043.43 | $ - |
| 2/19/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 39,229.62 | | | | $ - | $ 98,769.32 | $ - | $ (11,867.80) | $ 6,058.43 | $ - |
| 2/27/2018 | | | | COUNTY TAX DISBURSED | 10/1/2014 | $ 39,229.62 | | | $ (348.59) | $ - | $ 98,769.32 | $ - | $ (12,216.39) | $ 6,058.43 | $ - |
| 3/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 40,186.44 | | | | $ - | $ 98,769.32 | $ - | $ (12,216.39) | $ 6,058.43 | $ - |
| 3/22/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 40,186.44 | | | | $ - | $ 98,769.32 | $ - | $ (12,216.39) | $ 6,073.43 | $ - |
| 3/29/2018 | | | | TOWN TAX DISBURSED | 10/1/2014 | $ 40,186.44 | | | $ (497.23) | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,073.43 | $ - |
| 4/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 41,143.26 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,073.43 | $ - |
| 4/23/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 41,143.26 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,088.43 | $ - |
| 5/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 42,100.08 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,088.43 | $ - |
| 5/21/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 42,100.08 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,103.43 | $ - |
| 6/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 43,056.90 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,103.43 | $ - |
| 6/19/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 43,056.90 | | | | $ - | $ 98,769.32 | $ - | $ (12,713.62) | $ 6,118.43 | $ - |
| 6/21/2018 | | | | HAZARD SFR DISBURSED | 10/1/2014 | $ 43,056.90 | | | $ (1,067.00) | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,118.43 | $ - |
| 7/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 44,013.72 | | | | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,118.43 | $ - |
| 7/24/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 44,013.72 | | | | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,133.43 | $ - |
| 8/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 44,970.54 | | | | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,133.43 | $ - |
| 8/16/2018 | | | $ 15.00 | Prop Insp | 10/1/2014 | $ 44,970.54 | | | | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,148.43 | $ - |
| 9/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 45,927.36 | | | | $ - | $ 98,769.32 | $ - | $ (13,780.62) | $ 6,148.43 | $ - |
| 9/10/2018 | | | | SCHOOL TAX DISBURSED | 10/1/2014 | $ 45,927.36 | | | $ (2,426.67) | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,148.43 | $ - |
| 10/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 46,884.18 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,148.43 | $ - |
| 10/11/2018 | | | $ 150.00 | Service Fee | 10/1/2014 | $ 46,884.18 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,298.43 | $ - |
| 10/11/2018 | | | $ 50.00 | Service Fee | 10/1/2014 | $ 46,884.18 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,348.43 | $ - |
| 11/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 47,841.00 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,348.43 | $ - |
| 12/1/2018 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 48,797.82 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,348.43 | $ - |
| 1/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 49,754.64 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,348.43 | $ - |
| 2/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 50,711.46 | | | | $ - | $ 98,769.32 | $ - | $ (16,207.29) | $ 6,348.43 | $ - |
| 2/27/2019 | | | | COUNTY TAX DISBURSED | 10/1/2014 | $ 50,711.46 | | | $ (348.59) | $ - | $ 98,769.32 | $ - | $ (16,555.88) | $ 6,348.43 | $ - |
| 3/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 51,668.28 | | | | $ - | $ 98,769.32 | $ - | $ (16,555.88) | $ 6,348.43 | $ - |
| 4/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 52,625.10 | | | | $ - | $ 98,769.32 | $ - | $ (16,555.88) | $ 6,348.43 | $ - |
| 4/15/2019 | | | | TOWN TAX DISBURSED | 10/1/2014 | $ 52,625.10 | | | $ (588.57) | $ - | $ 98,769.32 | $ - | $ (17,144.45) | $ 6,348.43 | $ - |
| 5/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 53,581.92 | | | | $ - | $ 98,769.32 | $ - | $ (17,144.45) | $ 6,348.43 | $ - |
| 6/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 54,538.74 | | | | $ - | $ 98,769.32 | $ - | $ (17,144.45) | $ 6,348.43 | $ - |
| 6/20/2019 | | | | HAZARD SFR DISBURSED | 10/1/2014 | $ 54,538.74 | | | $ (1,094.00) | $ - | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | $ - |
| 7/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 55,495.56 | | | | $ - | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | $ - |
| 8/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 56,452.38 | | | | $ - | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | $ - |
| 8/12/2019 | | $ 15.00 | | PMT-MISC SUSP | 10/1/2014 | $ 56,437.38 | $ - | $ - | $ - | $ 15.00 | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | 15.00 |
| 8/12/2019 | | $ (15.00) | | MISC SUSP DISB | 10/1/2014 | $ 56,452.38 | $ - | $ - | $ - | $ (15.00) | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | $ - |
| 9/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 57,409.20 | | | | $ - | $ 98,769.32 | $ - | $ (18,238.45) | $ 6,348.43 | $ - |
| 9/5/2019 | | | | SCHOOL TAX DISBURSED | 10/1/2014 | $ 57,409.20 | | | $ (2,425.37) | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 6,348.43 | $ - |
| 9/27/2019 | | | $ 875.00 | FC Fee | 10/1/2014 | $ 57,409.20 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,223.43 | $ - |
| 10/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,223.43 | $ - |
| 10/7/2019 | | | $ 11.90 | Certified Mail | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,235.33 | $ - |
| 10/7/2019 | | | $ 7.28 | Certified Mail | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,242.61 | $ - |
| 10/7/2019 | | | $ 35.00 | Filling Costs | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,277.61 | $ - |
| 10/7/2019 | | | $ 41.50 | Filling Costs | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,319.11 | $ - |
| 10/7/2019 | | | $ 50.00 | Publication | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 7,369.11 | $ - |
| 10/7/2019 | | | $ 2,000.00 | SHERIFF COSTS | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 9,369.11 | $ - |
| 10/7/2019 | | | $ 350.00 | Title Examintn | 10/1/2014 | $ 58,366.02 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 9,719.11 | $ - |
| 11/1/2019 | $ 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 59,322.84 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 9,719.11 | $ - |
| 11/4/2019 | | | $ 2.73 | Certified Mail | 10/1/2014 | $ 59,322.84 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 9,721.84 | $ - |
| 11/4/2019 | | | $ 75.00 | Filling Costs | 10/1/2014 | $ 59,322.84 | | | | $ - | $ 98,769.32 | $ - | $ (20,663.82) | $ 9,796.84 | $ - |

| Date | | | | Amount | Description | Date | Amount | | | | | $ | | $ | | | $ | | $ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/4/2019 | | | $ 3,027.85 | | Publication | 10/1/2014 | $ 59,322.84 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,824.69 | $ | - |
| 12/1/2019 | $ | 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,824.69 | $ | - |
| 12/5/2019 | | | $ | 500.00 | FC Fee | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,324.69 | $ | - |
| 12/5/2019 | | | $ | 125.00 | Filling Costs | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,449.69 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,401.85 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,354.01 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,306.17 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,258.33 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,210.49 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,162.65 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,114.81 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,066.97 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 13,019.13 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,971.29 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,923.45 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,875.61 | $ | - |
| 12/17/2019 | | | $ | (47.84) | NON CASH FEE ADJ | 10/1/2014 | $ 60,279.66 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,827.77 | $ | - |
| 1/1/2020 | $ | 956.82 | | | Delinquent P&I Payment Due | 10/1/2014 | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 12,827.77 | $ | - |
| 1/30/2020 | | | $ (2,000.00) | | Non claiamble SHERIFF COSTS | 10/1/2014 | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,827.77 | $ | - |
| 1/30/2020 | | | $ | (690.00) | Non Claimable Prop Insp (PA) | 10/1/2014 | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |
| | | | | | | | $ 61,236.48 | | | | | $ | - | $ | 98,769.32 | $ - | $ (20,663.82) | $ 10,137.77 | $ | - |

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*)—Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

May 04, 2007                    MONROEVILLE                    Pennsylvania
[Date]                              [City]                           [State]

231 YOSEMITE DRIVE
PITTSBURGH, PA 15235

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $105,355.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          10.5500%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on          June 01, 2007

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on          May 01, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 150 ALLEGHENY CENTER MALL, PITTSBURGH, PA 15212

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 967.66          . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE—LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*)—
Single Family—Fannie Mae Uniform Instrument

Form 3520 1/01

GreatDocs™
To Order Call: 1-800-968-0775

ITEM ▮▮▮ MFCD ▮▮▮          (Page 1 of 4 pages)

(Page 3 of 66) Case 20-203462-20-20346-00-86 Clerk 048102202 Enter 04/09/20 Page 4:30 of 45esc Main
Document    Page 25 of 62

Cop

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A)  Change Dates

The interest rate I will pay may change on the first day of          May 2009          , and on that day every sixth month thereafter.  Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six months U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and Four Tenths

percentage points (          6.4000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)  Limits on Interest Rate Change

The interest rate I am required to pay at the first Change Date will not be greater then          13.5500% or less than 10.5500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than

One

percentage points (          1.0000  %) from the rate of interest I have been paying for the proceeding    6    months. My interest rate will never be greater than          16.5500  % nor less than          10.5500 %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY ··

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3520 1/01

GreatDocs ™
To Order Call 1-800-968-5775

ITEN        MFCD

*(Page 2 of 4 pages)*

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    Fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.0000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

ITEM   MFCD

*(Page 3 of 4 pages)*

Form 3520 1/01
GreatDocs™
To Order Call: 1-800-968-5775

(Page 5 of 66) Case 20-20346-CMB Claim 1-1 Filed 08/03/20 Entered 04/09/20 Page 04:30 of 45esc Main
Document     Page 27 of 62

Cop

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)     _____ (Seal)
SANDRA STRADER          -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                              -Borrower

_____ (Seal)     _____ (Seal)
                        -Borrower                              -Borrower

Pay to the order of:                 Pay to the order of:
**First Franklin Financial Corporation**
**Without Recourse**                 Without Recourse                [Sign Original Only]
**First Franklin Financial Corp.**   First Franklin Financial Corporation
**an Op. Sub. of MLB&T Co., FSB**    By
**By:**                              Angela Breen
**Angela Breen**                     Closer
**Closer**

**

**THE PREPAYMENT NOTE ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF
AMENDS THE PREPAYMENT PROVISIONS OF THIS NOTE**

Initials   Initials   Initials   Initials   Initials   Initials

Form 3520 1/01
GreatDocs™
To Order Call: 1-800-968-5775

ITEM        MFCD                     (Page 4 of 4 pages)

Cop

# PREPAYMENT NOTE ADDENDUM

This Prepayment Note Addendum is made this    4th    day of    May 2007 ,
and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") given
by the undersigned (the "Borrower") to evidence Borrower's indebtedness to
**FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB**
(the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security
Instrument"), of the same date and covering the property described in the Security Instrument and located at:

231 YOSEMITE DRIVE
PITTSBURGH, PA 15235

**ADDITIONAL COVENANTS.**    Notwithstanding anything to the contrary set forth in the Note or Security
Instrument, Borrower and Lender further covenant and agree as follows:

1. Section 5 of the Adjustable Rate Note, is modified to provide for a prepayment charge upon Borrower's full
prepayment.  A "full prepayment" is the prepayment of all of the unpaid principal due under the Note.  A
prepayment of only part of the unpaid principal is known as a "partial prepayment."

Borrower can make a partial prepayment at anytime without paying any charge.  Borrower may make a full
prepayment at anytime subject to a prepayment charge as follows:

If within the first  24  months after the date Borrower executes the Note, Borrower makes a full prepayment
(including prepayments occurring as a result of the acceleration of the maturity of the Note), Borrower must, as a
condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid in any 12 month period
in excess of 20% of the unpaid balance.  The prepayment charge will equal the interest that would accrue during a
six-month period on the Excess Principal calculated at the rate of interest in effect under the terms of the Note at the
time of the full prepayment.

2. All other provisions of the Note are unchanged by this addendum and remain in full force and effect.

**NOTICE TO BORROWER**

**Do not sign this loan agreement before you read it.  This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in the Prepayment
Note Addendum.

_____ (Seal)          _____ (Seal)
SANDRA STRADER                -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                              -Borrower                                                      -Borrower

Adjustable Rate Prepayment Note Addendum - First Lien – AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, KS, LA, MA, MD,
MN, MT, ND, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY
MFC
FF

Copy



**Allegheny County**
**Valerie McDonald Roberts**
**Recorder of Deeds**
Pittsburgh, PA 15219

**Instrument Number:**

Recorded On: May 08, 2007          **As-Mortgage**

Parties: **STRADER SANDRA**

To          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC NOM**          **# of Pages: 20**

Comment:

## **\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

| Mortgage | | 76.00 |
|---|---|---|
| | Pages > 4 | 15 |
| | Names > 4 | 0 |
| Total: | | 76.00 |

*I hereby certify that the within and foregoing was recorded in the Recorder's Office in  Allegheny County, PA*

## **\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

**File Information:**

Document Number
Receipt Number
Recorded Date/Time: May 08, 2007 09:43:15A
Book-Vol/Pg: BK-M  VL:          PG-212
User / Station: K Hills - Cash Super 06

**Record and Return To:**

FIRST FRANKLIN FINANCIAL CORP
C/O SECURITY CONNECTIONS
595 UNIVERSITY BLVD DEPT 2150
IDAHO FALLS IN 83401



**Valerie McDonald-Roberts Recorder of Deeds**

Copy

Prepared By: FIRST FRANKLIN FINANCIAL CORP.
22901 MILL CREEK BLVD, SUITE 100, HIGHLAND HILLS, OH 44122

800-464-8203

Return To:     FIRST FRANKLIN FINANCIAL CORP.
c/o SECURITY CONNECTIONS
595 UNIVERSITY BLVD., DEPT. 2150
IDAHO FALLS, ID 83401

Parcel No.: ▮▮▮▮▮

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

MIN ▮▮▮▮▮

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated     May 04, 2007     , together with all Riders to this document.

(B) **"Borrower"** is SANDRA STRADER, AN UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB     .
Lender is a Corporation     organized and existing under
the laws of Delaware     . Lender's address is
2150 NORTH FIRST STREET, SAN JOSE, California 95131

(E) **"Note"** means the promissory note signed by Borrower and dated     May 04, 2007     . The Note states that Borrower owes Lender One Hundred Five Thousand Three Hundred Fifty Five and no/100
Dollars (U.S. $105,355.00                     )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     May 01, 2037     .

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3039 1/01
GreatDocs™
To Order Call: 1-800-968-5775

ITEM ▮▮▮ —MERS MFPA ▮▮     *(Page 1 of 14 pages)*



Copy

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] Other(s) [specify] Prepay Rider |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM ▮▮▮—MERS MFPA▮▮▮                    *(Page 2 of 14 pages)*

Form 3039 1/01
GreatDocs™
To Order Call: 1-800-968-5775

Copy

**(Q)  "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **COUNTY**

[Type of Recording Jurisdiction]

of    **ALLEGHENY**    :
[Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of                **231 YOSEMITE DRIVE**
[Street]

**PITTSBURGH**        , Pennsylvania    **15235**        ("Property Address"):
[City]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT            Form 3039 1/01

GreatDocs™

ITEM        -MERSMFP/        *(Page 3 of 14 pages)*        To Order Call: 1-800-968-5775

Copy

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay Funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower

Copy

shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3039 1/01
GreatDocs™
To Order Call: 1-800-968-5775

ITEM ▮▮▮▮—MERS MFPA ▮▮▮▮                    (Page 5 of 14 pages)

Copy

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or

Copy

otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM ▓▓▓ —MERS MFP▓▓

*(Page 7 of 14 pages)*

Form 3039 1/01
GreatDocs™
To Order Call: 1-800-968-5775

Copy

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

Copy

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization

Copy

of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations

Copy

contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3039 1/01

ITEM          —MERS MFPA

*(Page 11 of 14 pages)*

GreatDocs™
To Order Call: 1-800-968-5775

Copy

Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without**

Copy

further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 14 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)        _____(Seal)
SANDRA STRADER              -Borrower                                      -Borrower


_____(Seal)        _____(Seal)
                             -Borrower                                      -Borrower


_____(Seal)        _____(Seal)
                             -Borrower                                      -Borrower


Witness:                                       Witness:

_____               _____
IRA L. MAZER

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3039 1/01
                                                                             GreatDocs™
ITEM ████ —MERSMFPA ████          (Page 13 of 14 pages)            To Order Call: 1-800-968-5775

Copy

State of Pennsylvania
County of ALLECHENY

On this the 4TH day of MAY 2007 , before me,
IRA R. MAZER the undersigned officer, personally appeared SANDRA STRADER

known to me (or satisfactorily proved) to be the person(s) whose name(s) is
subscribed to the within instrument and acknowledged that      he/she      executed the same for the purposes
therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Ira R. Mazer, Notary Public
Monroeville Boro, Allegheny County
My Commission Expires July 27, 2009      NOTARY PUBLIC
Member, Pennsylvania Association of Notaries

Title of Officer

My commission expires:

CERTIFICATE OF RESIDENCE      I, IRA R. MAZER
do hereby certify that the correct address of the within named lender is 2150 NORTH FIRST STREET,
SAN JOSE, California 95131

Witness my hand this 4TH day of MAY . 2007

Agent of Lender

PENNSYLVANIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3039 1/01
GreatDocs™
ITEM       —MERS MFPA      (Page 14 of 14 pages)      To Order Call: 1-800-968-5775

Copy

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground situate in the Municipality of Penn Hills, County of Allegheny and Commonwealth of Pennsylvania, being Lot No. 421 in the Park Plan of Lots No. 2 as recorded in the Office of the Recorder of Deeds of Allegheny County, Pennsylvania in Plan Book Volume 73, Page 134.

IDENTIFIED as Lot and Block 537-J-14 in the Deed Registry Office of Allegheny County, Pennsylvania.

HAVING erected a dwelling thereon known as 231 Yosemite Drive, Pittsburgh, PA 15235.

SUBJECT TO and TOGETHER WITH any and all oil and gas leases, the sale of coal and mining rights and all rights relating thereto, building lines, rights-of-way, zoning regulations, building restrictions, reservations, restrictive covenants, easements, rights and obligations, encroachments, association fees and/or dues, if any, etc., as the same may be contained in prior instruments of record, set forth in the recorded plan and/or as shown on a survey of the property.

Copy

# ADJUSTABLE RATE RIDER
### (LIBOR 6 Month Index (As Published In The Wall Street Journal) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this      4th      day of      May 2007
, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

231 YOSEMITE DRIVE
PITTSBURGH, PA 15235
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of      10.5500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A)  Change Dates
The interest rate I will pay may change on the first day of      May 2009
and on that day every      6th      month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B)  The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Six and Four Tenths
percentage points (      6.4000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR 6 MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL) -- Single Family

ITEM       (C5751L)      MFCD          *(Page 1 of 3 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393 □Fax 616-791-1131

Copy

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)  Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        13.5500% or less than        10.5500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One

percentage point(s) (        1.0000 %) from the rate of interest I have been paying for the preceding        6        months; subject to the following limits: My interest rate will never be greater than        16.5500%, nor less than        10.5500 %.

### (E)  Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)  Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the telephone number of a person who will answer any question I may have regarding the notice.

## B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

ITEM ▇▇ (C5751L) ▇▇        *(Page 2 of 3 pages)*        ▇▇
GREATLAND ■
To Order Call: 1-800-530-9393 ☐Fax 616-791-1131

Copy

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____(Seal)  _____(Seal)
SANDRA STRADER     -Borrower           -Borrower

_____(Seal)  _____(Seal)
            -Borrower           -Borrower

_____(Seal)  _____(Seal)
            -Borrower           -Borrower

*[Sign Original Only]*

*(Page 3 of 3 pages)*

Copy

# PREPAYMENT RIDER

This Prepayment Rider is made this          4th          day of          May 2007          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or the
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note (the "Note") to
FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

231 YOSEMITE DRIVE
PITTSBURGH, PA 15235

**ADDITIONAL COVENANTS.**     In addition to the covenants and agreements made in the Security
instrument, Borrower and Lender further covenant and agree as follows:

Borrower can make a partial prepayment at anytime without paying any charge. Borrower may make a
full prepayment at any time subject to a prepayment charge as follows:

If within the first     24     months after the date Borrower executes the Note, Borrower makes a full
prepayment (including prepayments occurring as a result of the acceleration of the maturity of the Note),
Borrower must, as a condition precedent to a full prepayment, pay a prepayment charge on any amount prepaid
in any 12 month period in excess of 20% of the unpaid balance. The prepayment charge will equal the interest
that would accrue during a six-month period on the Excess Principal calculated at the rate of interest in effect
under the terms of the Note at the time of the full prepayment.

## NOTICE TO BORROWER

**Do not sign this loan agreement before you read it. This loan agreement provides for the payment of a
penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Prepayment Rider.

_____ (Seal)          _____ (Seal)
SANDRA STRADER          -Borrower          -Borrower


_____ (Seal)          _____ (Seal)
          -Borrower          -Borrower


_____ (Seal)          _____ (Seal)
          -Borrower          -Borrower


Adjustable Rate Prepayment Rider - First Lien – AK, AL, AZ, CA, CO, CT, DC, DE, FL, GA, HI, IA, ID, KS, LA, MA, MD, MN,
MT, ND, NE, NH, NJ, NM, NV, NY, OK, OR, PA, RI, SC, SD, TN, TX, UT, VA, VT, WA, WY

MFCD



**Allegheny County**
**Jerry Tyskiewicz**
**Department of Real Estate**
Pittsburgh, PA 15219

Instrument Number:                    BK-M VL-    PG-134

**Recorded On:** August 25, 2015     **As-**Mortgage Assignment

**Parties:** MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC NOM

**To**     U S BANK N A TRSTE                                      **# of Pages:** 3

**Comment:** SANDRA STRADER

************ **THIS IS NOT A BILL** ************

| | | |
|---|---|---|
| Mortgage Assignment | 162.00 | |
| | 0 | |
| | D | |
| **Total:** | 162.00 | |

---

*I hereby certify that the within and foregoing was recorded in the Department of Real Estate in  Allegheny County, PA*
**\*\*DO NOT REMOVE-THIS PAGE IS PART OF THE RECORDED DOCUMENT\*\***

**File Information:**                                      **Record and Return To:**

Document Number:
Receipt Number:                                          NATIONSTAR MORTGAGE
Recorded Date/Time: August 25, 2015 12:25:22P           LIEN RELEASE DEPARTMENT
Book-Vol/Pg: BK-M VL    PG-134                           8950 CYPRESS WATERS BLVD
User / Station: J Clark - Cash Station 25               COPPELL TX 75019

Jerry Tyskiewicz, Director
Rich Fitzgerald, County Executive

When Recorded Return To:
DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Assessor's/Tax ID No █████

---

**CORPORATE ASSIGNMENT OF MORTGAGE**

Allegheny, Pennsylvania
SELLER'S SERVICING █████        "STRADER"

MIN #: █████        SIS #: █████

Date of Assignment: August 10th, 2015
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST
FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB, ITS SUCCESSORS AND/OR
ASSIGNS
Assignee: U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MERRILL LYNCH FIRST
FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN ASSET-BACKED CERTIFICATES,
SERIES 2007-4

I hereby certify the precise address of the within named Assignor is P.O. BOX 2026, FLINT, MI 48501.

I hereby certify the precise address of the within named Assignee is 425 WALNUT STREET,
CINCINNATI, OH 45202.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C,
Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: SANDRA STRADER, AN UNMARRIED WOMAN To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP.
SUB. OF MLB&T CO., FSB
Date of Mortgage: 05/04/2007 Recorded: 05/08/2007 in Book/Reel/Liber: M 33788 Page/Folio: 212 as
Instrument/Document: █████ In the County of Allegheny, State of Pennsylvania.
231 YOSEMITE DRIVE, PITTSBURGH, PA 15235 in the Municipality of PENN HILLS

I do certify that the precise address of U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR
MERRILL LYNCH FIRST FRANKLIN MORTGAGE LOAN TRUST, MORTGAGE LOAN
ASSET-BACKED CERTIFICATES, SERIES 2007-4 is 425 WALNUT STREET, CINCINNATI, OH 45202
Attested By: _Andre Faibh_ Andrew Friedrich

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $105,355.00 with interest, secured

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB, ITS SUCCESSORS AND/OR ASSIGNS
On August 10th, 2015

By: _____
ANDREW FRIEDRICH, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On August 10th, 2015, before me, WILLIAM VIANA, a Notary Public in and for Dallas in the State of Texas, personally appeared ANDREW FRIEDRICH, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FIRST FRANKLIN FINANCIAL CORP., AN OP. SUB. OF MLB&T CO., FSB, ITS SUCCESSORS AND/OR ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
WILLIAM VIANA
Notary Expires: 02/02/2019

WILLIAM VIANA
Notary Public, State of Texas
My Commission Expires
February 02, 2019

(This area for notarial seal)

Case 20-20346-CMB Claim 14-1 Part 2  Filed 04/09/20   Page 39 of 45

# mr. cooper™
CHANGING THE FACE OF HOME LOANS

# Annual Escrow Account Disclosure Statement

2/11/2020

8950 Cypress Waters Blvd.
Coppell TX 75019

SANDRA  STRADER

231 YOSEMITE DR
PITTSBURGH, PA  15235

| Loan Number | | |
|---|---|---|
| Analysis Date | | February 4, 2020 |
| **Previous Payment** | | |
| Principal & Interest | $ | 956.82 |
| Escrow | $ | 371.38 |
| Total | $ | 1,328.20 |
| **New Payment** | | |
| Effective Date | | February 1, 2020 |
| Principal & Interest | $ | 956.82 |
| Escrow | $ | 371.38 |
| **Total** | **$** | **1,328.20** |

The purpose of the Coming Year Escrow Projection is to determine the lowest balance "Low Point" to which your escrow account will decline over the upcoming year.  The purpose of the Low Balance Summary is to compare the projected and allowable low point amounts. If the projected low point is greater than the allowable low point, there is a surplus.  If the projected low point is less than the allowable low point, there is a shortage and/or deficiency which will be recovered by an adjustment to your monthly payment over a specified number of months. The adjustment amount(s) appears in the Low Balance Summary and New Payment information.

**Our records indicate that you have filed a bankruptcy.** This statement is sent for informational purposes only and is not an attempt to collect a debt.  It does not alter or affect the terms of your bankruptcy proceedings. Please disregard the payment information if it conflicts with any order or requirement of the court.
If you filed a Chapter 13, any unpaid amounts prior to the filing of your bankruptcy petition may be paid through and in accordance with your bankruptcy plan. If you are a Chapter 13 debtor whose plan requires you to make regular post petition payments directly to the Chapter 13 trustee, any payment should be remitted to the trustee directly and not to Nationstar Mortgage LLC.

| Escrow Accounts Summary | | |
|---|---|---|
| Tax | $ | 3,362.53 |
| Insurance | $ | 1,094.00 |
| Lender-Placed Insurance | $ | - |
| Mortgage Insurance | $ | - |
| **Annual Total** | **$** | **4,456.53** |
| **Approximate Monthly Deposit** | **$** | **371.38** |
| **Monthly Deposit Without Mortgage Insurance** | **$** | **371.38** |
| **RESPA Cushion (About Two Monthly Deposits)*** | **$** | **742.76** |

| Escrow Included in Proof of Claims | | |
|---|---|---|
| Bankruptcy Filing Date | | January 30, 2020 |
| Total Escrow Funds Advanced by Your Servicer at Filing Date | $ | 20,663.82 |
| **Plus** Balance Required at Filing to Maintain RESPA Minimum | $ | 2,599.63 |
| **Minus** Escrow Account Balance at Filing Date | $ | - |
| **Total Shortage at Filing Date** | **$** | **23,263.45** |

This column shows your new monthly escrow deposits over the next escrow cycle.

These columns show when each of your escrow accounts is expected to be paid during the next escrow cycle.

This column shows what your escrow balance would be without any additional funds.

This column shows the calculation of the amount of funds needed to maintain your RESPA cushion* through the next escrow cycle.

## Escrow Balance Projection

| Month | Escrow Payment | Tax Disbursements | Insurance Disbursements | LPI Disbursements | Mortgage Insurance Disbursements | Balance | Required Balance |
|---|---|---|---|---|---|---|---|
| | | | | | Beginning Balance $ | $ - | $ 2,599.63 |
| Feb 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ 371.38 | $ 2,971.01 |
| Mar 2020 | $ 371.38 | $ 348.59 | $ - | $ - | $ - | $ 394.17 | $ 2,993.80 |
| Apr 2020 | $ 371.38 | $ 588.57 | $ - | $ - | $ - | $ 176.98 | $ 2,776.61 |
| May 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ 548.36 | $ 3,147.99 |
| Jun 2020 | $ 371.38 | $ - | $ 1,094.00 | $ - | $ - | $ (174.26) | $ 2,425.37 |
| Jul 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ 197.12 | $ 2,796.75 |
| Aug 2020 | $ 371.38 | $ 2,425.37 | $ - | $ - | $ - | $ (1,856.87) | $ 742.76 * |
| Sep 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ (1,485.49) | $ 1,114.14 |
| Oct 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ (1,114.11) | $ 1,485.52 |
| Nov 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ (742.73) | $ 1,856.90 |
| Dec 2020 | $ 371.38 | $ - | $ - | $ - | $ - | $ (371.35) | $ 2,228.28 |
| Jan 2021 | $ 371.38 | $ - | $ - | $ - | $ - | $ 0.03 | $ 2,599.66 |
| **Totals** | **$ 4,456.56** | **$ 3,362.53** | **$ 1,094.00** | **$ -** | **$ -** | | |
| | | | Balance Required at Filing to Maintain RESPA Cushion* | | | **$** | **2,599.63** |

* - The cushion allowed by federal law (RESPA) is two times your monthly escrow payment excluding any mortgage insurance payments, unless your state's laws specify a lower amount. The highlighted value in the Required Balance column indicates where the RESPA cushion limit is set--this is lowest balance your Escrow account will reach during the next Escrow cycle and all of the other values in the column are based on it.

Case 20-20346-CMB Claim 14-1 Part 2 Filed 04/09/20 Page 40 of 45

**mr. cooper**
CHANGING THE FACE OF HOME LOANS

## Annual Escrow Account
## Disclosure Statement

2/11/2020

8950 Cypress Waters Blvd.
Coppell TX 75019

### Escrow Account Transactions Prior to Bankruptcy Filing

| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|---|---|---|---|---|---|---|---|
| 7/5/2013 | Beginning Escrow Balance | $ - | $ - | $ - | $ (1,623.55) | $ 1,623.55 | $ - |
| 7/12/2013 | Payment | $ - | $ 284.92 | $ - | $ - | $ 1,908.47 | $ - |
| 8/5/2013 | Escrow Advance - Tax | $ 57.06 | $ - | $ - | $ - | $ 1,965.53 | $ 57.06 |
| 8/5/2013 | School Tax Disbursed | $ - | $ - | $ - | $ 1,965.53 | $ - | $ 57.06 |
| 8/19/2013 | Payment | $ - | $ 284.92 | $ - | $ - | $ 284.92 | $ 57.06 |
| 8/19/2013 | Escrow Advance Recovery | $ - | $ - | $ 57.06 | $ - | $ 227.86 | $ - |
| 9/13/2013 | Payment | $ - | $ 284.92 | $ - | $ - | $ 512.78 | $ - |
| 10/15/2013 | Payment | $ - | $ 284.92 | $ - | $ - | $ 797.70 | $ - |
| 11/15/2013 | Payment | $ - | $ 284.92 | $ - | $ - | $ 1,082.62 | $ - |
| 12/11/2013 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,324.30 | $ - |
| 1/10/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,565.98 | $ - |
| 2/13/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,807.66 | $ - |
| 3/4/2014 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ 1,459.07 | $ - |
| 3/13/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,700.75 | $ - |
| 4/9/2014 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 497.23 | $ 1,203.52 | $ - |
| 4/11/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,445.20 | $ - |
| 5/16/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,686.88 | $ - |
| 6/12/2014 | Payment | $ - | $ 241.68 | $ - | $ - | $ 1,928.56 | $ - |
| 8/19/2014 | Escrow Advance - Tax | $ 92.25 | $ - | $ - | $ - | $ 2,020.81 | $ 92.25 |
| 8/19/2014 | School Tax Disbursed | $ - | $ - | $ - | $ 2,020.81 | $ - | $ 92.25 |
| 10/6/2014 | Monthly Mortgage Payment | $ - | $ 241.68 | $ - | $ - | $ 241.68 | $ 92.25 |
| 10/6/2014 | Escrow Advance Recovery | $ - | $ - | $ 92.25 | $ - | $ 149.43 | $ - |
| 10/31/2014 | Monthly Mortgage Payment | $ - | $ 241.68 | $ - | $ - | $ 391.11 | $ - |
| 12/15/2014 | Monthly Mortgage Payment | $ - | $ 241.68 | $ - | $ - | $ 632.79 | $ - |
| 2/19/2015 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ 284.20 | $ - |
| 4/16/2015 | Escrow Advance - Tax | $ 213.03 | $ - | $ - | $ - | $ 497.23 | $ 213.03 |
| 4/16/2015 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 497.23 | $ - | $ 213.03 |
| 8/13/2015 | Escrow Advance - Tax | $ 2,078.16 | $ - | $ - | $ - | $ 2,078.16 | $ 2,291.19 |
| 8/13/2015 | School Tax Disbursed | $ - | $ - | $ - | $ 2,078.16 | $ - | $ 2,291.19 |
| 9/3/2015 | Escrow Advance - Insurance | $ 1,143.00 | $ - | $ - | $ - | $ 1,143.00 | $ 3,434.19 |
| 9/3/2015 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,143.00 | $ - | $ 3,434.19 |
| 2/24/2016 | Escrow Advance - Tax | $ 348.59 | $ - | $ - | $ - | $ 348.59 | $ 3,782.78 |
| 2/24/2016 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ - | $ 3,782.78 |
| 4/19/2016 | Escrow Advance - Tax | $ 497.23 | $ - | $ - | $ - | $ 497.23 | $ 4,280.01 |
| 4/19/2016 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 497.23 | $ - | $ 4,280.01 |
| 6/21/2016 | Escrow Advance - Insurance | $ 1,151.00 | $ - | $ - | $ - | $ 1,151.00 | $ 5,431.01 |
| 6/21/2016 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,151.00 | $ - | $ 5,431.01 |
| 8/16/2016 | Escrow Advance - Tax | $ 2,208.99 | $ - | $ - | $ - | $ 2,208.99 | $ 7,640.00 |
| 8/16/2016 | School Tax Disbursed | $ - | $ - | $ - | $ 2,208.99 | $ - | $ 7,640.00 |
| 2/28/2017 | Escrow Advance - Tax | $ 348.59 | $ - | $ - | $ - | $ 348.59 | $ 7,988.59 |
| 2/28/2017 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ - | $ 7,988.59 |
| 4/19/2017 | Escrow Advance - Tax | $ 497.23 | $ - | $ - | $ - | $ 497.23 | $ 8,485.82 |
| 4/19/2017 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 497.23 | $ - | $ 8,485.82 |
| 6/20/2017 | Escrow Advance - Insurance | $ 1,056.00 | $ - | $ - | $ - | $ 1,056.00 | $ 9,541.82 |
| 6/20/2017 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,056.00 | $ - | $ 9,541.82 |
| 8/10/2017 | Escrow Advance - Tax | $ 2,325.98 | $ - | $ - | $ - | $ 2,325.98 | $ 11,867.80 |
| 8/10/2017 | School Tax Disbursed | $ - | $ - | $ - | $ 2,325.98 | $ - | $ 11,867.80 |
| 2/27/2018 | Escrow Advance - Tax | $ 348.59 | $ - | $ - | $ - | $ 348.59 | $ 12,216.39 |
| 2/27/2018 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ - | $ 12,216.39 |
| 3/29/2018 | Escrow Advance - Tax | $ 497.23 | $ - | $ - | $ - | $ 497.23 | $ 12,713.62 |
| 3/29/2018 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 497.23 | $ - | $ 12,713.62 |
| 6/21/2018 | Escrow Advance - Insurance | $ 1,067.00 | $ - | $ - | $ - | $ 1,067.00 | $ 13,780.62 |
| 6/21/2018 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,067.00 | $ - | $ 13,780.62 |
| 9/10/2018 | Escrow Advance - Tax | $ 2,426.67 | $ - | $ - | $ - | $ 2,426.67 | $ 16,207.29 |
| 9/10/2018 | School Tax Disbursed | $ - | $ - | $ - | $ 2,426.67 | $ - | $ 16,207.29 |
| 2/27/2019 | Escrow Advance - Tax | $ 348.59 | $ - | $ - | $ - | $ 348.59 | $ 16,555.88 |
| 2/27/2019 | County Tax Disbursed | $ - | $ - | $ - | $ 348.59 | $ - | $ 16,555.88 |
| 4/15/2019 | Escrow Advance - Tax | $ 588.57 | $ - | $ - | $ - | $ 588.57 | $ 17,144.45 |
| 4/15/2019 | Escrow Disbursement - County Tax | $ - | $ - | $ - | $ 588.57 | $ - | $ 17,144.45 |
| 6/20/2019 | Escrow Advance - Insurance | $ 1,094.00 | $ - | $ - | $ - | $ 1,094.00 | $ 18,238.45 |
| 6/20/2019 | Hazard Insurance Disbursed | $ - | $ - | $ - | $ 1,094.00 | $ - | $ 18,238.45 |
| 9/5/2019 | Escrow Advance - Tax | $ 2,425.37 | $ - | $ - | $ - | $ 2,425.37 | $ 20,663.82 |
| 9/5/2019 | School Tax Disbursed | $ - | $ - | $ - | $ 2,425.37 | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| **Subtotals** | | **$ 20,813.13** | **$ 3,841.40** | **$ 149.31** | **$ 24,505.22** | **$ -** | **$ 20,663.82** |

# mr. cooper
**CHANGING THE FACE OF HOME LOANS**

## Annual Escrow Account
## Disclosure Statement

2/11/2020

8950 Cypress Waters Blvd.
Coppell TX 75019

| | | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
|---|---|---|---|---|---|---|---|
| | | | **Escrow Account Transactions Prior to Bankruptcy Filing** | | | | |
| Transaction Date | Description | | | | | | |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |

# mr. cooper
CHANGING THE FACE OF HOME LOANS

## Annual Escrow Account
## Disclosure Statement

2/11/2020

8950 Cypress Waters Blvd.
Connell TX 75019

| | Subtotals | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | $ | 20,813.13 | $ | 3,841.40 | $ | 149.31 | $ | 24,505.22 | $ | - | $ | 20,663.82 |

Case 20-20346-CMB   Claim 14-1 Part 2   Filed 04/09/20   Page 43 of 45

# Annual Escrow Account
# Disclosure Statement

*mr.*
## cooper™
CHANGING THE FACE OF HOME LOANS

2/11/2020

8950 Cypress Waters Blvd.
Coppell TX 75019

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |

Case 20-20346-CMB Claim 14-1 Part 2  Filed 04/09/20  Page 44 of 45

# Annual Escrow Account
# Disclosure Statement

2/11/2020

8950 Cypress Waters Blvd.
Coppell TX 75019

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| | | | | | $ | - | $ | 20,663.82 |
| Totals | $ 20,813.13 | $ 3,841.40 | $ 149.31 | $ 24,505.22 | $ | - | $ | 20,663.82 |

Case 20-20346-CMB   Claim 14-1 Part 2   Filed 04/09/20   Page 45 of 45

# Annual Escrow Account
# Disclosure Statement

2/11/2020

**mr.**
**cooper**
CHANGING THE FACE OF HOME LOANS

8950 Cypress Waters Blvd.
Coppell TX 75019

| | | Escrow Account Transactions Prior to Bankruptcy Filing | | | | | |
|---|---|---|---|---|---|---|---|
| Transaction Date | Description | Servicer Advance to Escrow | Borrower Deposit to Escrow | Servicer Recovery from Escrow | Payment from Escrow | Escrow Account Balance | Total Servicer Advances |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | | | | | | $ - | $ 20,663.82 |
| | Totals | $ 20,813.13 | $ 3,841.40 | $ 149.31 | $ 24,505.22 | $ - | $ 20,663.82 |

# Exhibit "B"

U.S. BANK NATIONAL ASSOCIATION,
AS TRUSTEE FOR MERRILL LYNCH
FIRST FRANKLIN MORTGAGE LOAN
TRUST, MORTGAGE ASSET-BACKED
CERTIFICATES, SERIES 2007-4,

        Plaintiff,

        v.

UNKNOWN HEIRS, SUCCESSORS,
ASSIGNS AND ALL PERSONS, FIRMS
OR ASSOCIATIONS CLAIMING RIGHT,
TITLE OR INTEREST FROM OR UNDER
SANDRA STRADER, DECEASED AND
VANCE STRADER, KNOWN HEIR OF
SANDRA STRADER, DECEASED AND
SONYA STRADER-CHERRY, KNOWN
HEIR OF SANDRA STRADER,
DECEASED,

        Defendants.

IN THE COURT OF COMMON PLEAS

OF ALLEGHENY COUNTY

CIVIL DIVISION

MG-15-001358



## ORDER

**AND NOW,** to wit, this _____11th_____ day of _Dec_, 2018, upon consideration of the

Motion for Summary Judgment filed by plaintiff U.S. Bank National Association, as Trustee for

Merrill Lynch First Franklin Mortgage Loan Trust, Mortgage Asset-Backed Certificates, Series

2007-4 ("Plaintiff" or "U.S. Bank"), along with Nationstar Mortgage LLC Affidavit in Support

of Plaintiff's Motion for Summary Judgment, Brief in Support of Plaintiff's Summary Judgment

and Exhibits, and any response thereto in opposition to the Motion, it is hereby

        **ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED**; and

**IT IS FURTHER ORDERED** that an *in rem* judgment shall be entered in favor of Plaintiff and against Defendants in the total amount due and owing on the Mortgage Loan as of September 6, 2018 which equals $ 161,373.82, together with additional interest, costs and other charges allowed by law or under the terms of the Mortgage Loan which accrue after September 6, 2018.

**BY THE COURT:**